## Sarbiewski *v.* Sarbiewski, Appellant.

Argued April 27, 1937.

464

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Vincent R. Smith,* with him *George H. Frich, Jr.,* for appellant.

*Alvar T. Leith,* for appellee.

Opinion by Rhodes, J., July 15, 1937:

This is an action of divorce brought by Barney H. Sarbiewski, the libellant, against his wife, Marie A. Sarbiewski. Subpoena in divorce was issued June 25, 1935, and in the libel filed libellant alleged as grounds for divorce: (1) Cruel and barbarous treatment endangering his life; (2) indignities to his person such as to render his condition intolerable and life burdensome. A bill of particulars was filed by libellant and an answer thereto by respondent. Libellant filed a replication to the answer.

The master who was appointed to take the testimony of witnesses recommended that a decree be refused the

libellant. Libellant filed exceptions to the master's report, and three judges, sitting in the court of common pleas, sustained the exceptions and granted the divorce on the grounds set forth in the libel.

As this action was heard before a master, we are obliged to make an independent investigation of the evidence in order to learn whether it does in truth establish a legal cause for divorce. *Rinoldo v. Rinoldo*, 125 Pa. Superior Ct. 323, 189 A. 566.

After reviewing the evidence, we are of the opinion that there was clearly established a course of conduct on the part of the respondent which manifests a settled hatred of, and estrangement from, the libellant, and which was expressed in indignities to his person such as to render his condition intolerable and life burdensome.

The master, in his report recommending that a decree be refused to the libellant, was of the opinion that libellant "was not an injured and innocent spouse," and that "he provoked the indignities complained of."

There appeared before the master, exclusive of the parties, 9 witnesses for the libellant, and 18 witnesses for the respondent. The balance of the evidence is not to be determined by the number of witnesses, but by the relevancy and credibility of the testimony of such witnesses.

Libellant and respondent were married on the 15th day of August, 1930, in Washington, D. C., and have one child who was born on July 10, 1933. On December 1, 1931, they went to housekeeping in Monessen, Westmoreland County, Pa., in a house owned by libellant's parents, and next door to where the latter resided. They continued their marital relations until April 21, 1935, when respondent left the common domicile, taking the child with her. Subsequently, libellant obtained the child, and had custody of it at the time of the hearing. For many years libellant had been

employed by the United States Post Office Department as a mail carrier. Marital troubles between the parties began in 1932 and continued to the time of their separation in April, 1935. At times during this period respondent threatened to poison libellant's food with a poison which she possessed, and to throw acid on him and their child. She often called him vile and filthy names. She charged him with having venereal afflictions, for which charge there was no basis. Continually during the last two years of their married life respondent accused libellant of infidelity with various women. She personally went to see some of the women with whom she suspected her husband was familiar, and accused them of improper conduct with him. The evidence discloses no proof of infidelity on the part of libellant.

Although respondent denied all the serious accusations of libellant, we are not impressed with much of her testimony. For example, she testified that libellant brought a Miss Puckinger and her mother to his home and denied in the presence of respondent that he was married, and that she had to prove to these parties that libellant was her husband by showing them her marriage certificate. She also stated that she had the Puckingers in her house to prove that libellant was running around with the daughter. Libellant testified that he brought the Puckingers to his house in order to disprove the accusations made by the respondent as to his alleged misconduct with Miss Puckinger. Libellant's version of this incident is more reasonable and probable than that of respondent. Respondent testified that Mrs. Sarah Sartina could corroborate her version of this incident. Mrs. Sartina was a witness for respondent, but her testimony shows no corroboration of respondent's story. Respondent also testified that she told Mrs. Sartina that she was breaking up her home, and accused her of running around with libellant. At

the hearing before the master, Mrs. Sartina, as a witness for the respondent, testified that she told respondent that libellant was running around with Miss Anna Urban who lived in Donora. Respondent made calls at the Urban home, called Miss Urban on the telephone, and saw her at her place of employment. She accused libellant of immoral relations with Miss Urban and with having a child born to her, and that he paid the sum of $3,000 to avoid criminal charges. The evidence discloses no basis for these accusations. Respondent wrote several letters to Miss Urban, repeating the accusations. These letters were most vile and vicious; and proof that respondent's attitude toward libellant was one of utmost contempt is found therein. The tone and nature of these letters are quite effective in substantiating libellant's version of respondent's attitude and conduct. Respondent neglected her household duties to the extent that their home was not a pleasant, if a fit, place to live; the dishes were seldom washed, and were allowed to accumulate until they were taken care of by libellant's mother or sister; the child was often left alone and so neglected that he developed skin irritation and sores; she refused to prepare libellant's meals, although he provided plenty of food. On two occasions respondent kicked the libellant in the testicles, and on another occasion stabbed libellant in the side with a fork.

There was corroboration of respondent's conduct in many instances toward libellant. Several witnesses testified as to the condition of the house, the neglect of the child, refusal to cook his meals, and the various threats. There was likewise corroboration of her accusations of misconduct with other women, of her calling libellant vile names, and of stabbing him in the side with a fork and kicking him.

Respondent's denials were accompanied with counter-charges against libellant. She testified that he called

her vile names and struck her on numerous occasions, and that she did the same to him. There are admissions by libellant that he swore at respondent, and struck her with his open hand on one or two occasions, once when she was mistreating their child. Libellant may not have been entirely free from blame, and his conduct may not always have been above reproach, but respondent's conduct was such that it constituted one of continued indignities, and we cannot conclude from the evidence that such conduct was provoked by libellant so as to defeat his right to a decree. See *Andrew v. Andrew,* 121 Pa. Superior Ct. 152, 182 A. 706; Brown *v. Brown,* 124 Pa. Superior Ct. 237, 188 A. 389; *Kett v. Kett,* 117 Pa. Superior Ct. 236, 177 A. 509. The weight of the credible evidence is with libellant, as shown by the record. The evidence, however, does not establish or show actual personal violence or reasonable apprehension of it so that libellant's life was endangered and cohabitation rendered unsafe. Therefore a decree cannot be granted on that ground. See *Rinoldo v. Rinoldo,* supra. Those acts of physical injury and threats by the respondent may, however, be considered in connection with her other conduct under the charge of indignities to the person. *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69.

We are of the opinion that the evidence establishes such a course of conduct or continued treatment as to render libellant's condition intolerable and life burdensome, and that he is entitled to a decree in divorce on that ground. We sustain the decree of the court below on the ground of indignities to the person.

Decree is affirmed.